UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION
Case No.:

BODY DETAILS, LLC d/b/a BODY DETAILS HQ,
a Delaware Limited Liability Company,

    Plaintiff,
Vs.
DOMINION AESTHETIC TECHNOLOGIES, INC.,
a Delaware Corporation.

    Defendant.                                              /

## COMPLAINT

Plaintiff, BODY DETAILS, LLC, by and through its counsel, hereby sues the Defendant, DOMINION AESTHETIC TECHNOLOGIES, INC., and alleges:

1. As a limited liability company, the citizenship of BODY DETAILS, LLC ("BD") d/b/a Body Details HQ, is defined by its members. *Nat'l Specialty Ins. Co. v. Marquis Yachts, LLC*, 2023 U.S. App. LEXIS 9836, *1 (11th Cir. 2023), citing *Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ.*, 663 F.3d 1304, 1305 (11th Cir. 2011)  For the purpose of establishing diversity of citizenship, both of BD's managing members are Florida residents who reside in this District.  A third member of BD, who is not a managing member, is a resident of California.

2. DOMINION AESTHETIC TECHNOLOGIES, INC. ("Dominion") is a Delaware corporation with its principal place of business in Texas.

3. Subject matter jurisdiction of this Court is based upon diversity of citizenship under 28 U.S.C. §1332, because neither party is a citizen of the same state as the other party. This Court also has personal jurisdiction because the parties have been doing business in Florida. This Court has supplemental jurisdiction over state law claims under 28 U.S.C. §1367.

4. At all times material to this Complaint, Dominion has, acting alone or in concert with others, transacted business in this District.

5. Venue is proper under 28 USC §1391 because a substantial portion of the conduct complained of herein occurred in this District.

6. At least one of the parties who BD will apparently be forced to subpoena, My Derma Clinic, LLC, is a citizen of Florida, and who is located in this District.

7. The amount claimed by the Plaintiff in this action is greater than $ 75,000.00 as required by 28 U.S.C. §1332.

Material Facts

**I. The Parties Negotiate, Enter Into Contract, and Establish a Limited Partnership**

8. BD is a medical treatment facility, which is primarily focused on providing consumers with cosmetic/aesthetic treatments on an outpatient basis using medical devices, specifically lasers.

9. Dominion manufactures and sells a medical device, a laser called the Eon FR laser (hereafter "Eon").

10. In 2019, Dominion obtained F.D.A. approval to market and sell the Eon for use as a body contouring device, specifically for fat reduction of the abdomen.

11. After obtaining FDA approval, Dominion sought a means to market the Eon in Florida.

12. Not only did BD already have many Florida locations from which to showcase the Eon, but BD was also steadily growing.

13. Dominion and BD commenced negotiating, during which negotiations all contractual drafting was performed exclusively by Dominion.

14. During those negotiations, Dominion referred to BD as a "*valued partner*" with whom it was starting a "*venture*", to which BD responded that "*We cannot commit to strumming up interest in and recognition of Eon unless we are connected in the long run.*"

15. Even after the negotiations were ultimately consummated, the parties' communications would reflect their intent to affirmatively build and grow Dominion together, rather than to have a strictly vendor/vendee relationship.

16. Through their intent and conduct, the parties formed a limited partnership to market the Eon.

17. By email at 4:40 pm on February 25, 2020, Dominion tendered a signed, written offer to BD.

18. That written offer took the form of a Master Sales Agreement – Sales Order (hereafter "Agreement/Order").

19. After characterizing the Agreement/Order which they "*have drafted*" as a "*proposal in confidence*", Dominion explained this confidential nature in that "*This is a **unique agreement** for you and Body Details that **will not be offered to the broader customer base***".

20. At that juncture, the parties were committing to the sale of just one (1) Eon – for a specific location - with Dominion stating in that confidential transmittal email that "*Upon execution of the agreement, we will schedule delivery, set-up and training for your eon device for March 16th **at your Boca Raton Body Details location***" and, consistently, that location's Boca Raton address was stated in the Agreement/Order.

2

21. Even if signed, the Agreement/Order was executory regarding sales of other Eons, but the intent was that those sales terms would apply to BD's future orders on Eons.

22. BD rejected the sales terms of that written offer and, as a counter-offer, discussed changes for Dominion to draft.

23. Confirming BD's discussion and Dominion's drafting, by email at 7:15 pm on February 25, 2020, Dominion tendered another signed, written offer to BD, with the transmittal email stating "*I have included all of the changes we discussed today (6 month timing, additional laser program/cost, training/support, before & after photos, request for demos).*"

24. BD rejected that written offer and, as a counter-offer, proposed changes for Dominion to draft.

25. By email at 6:43 pm on March 9, 2020, Dominion tendered another signed, written offer to BD, which took the form of a data file entitled (with all-caps emphasis in the original) "Body Details Proposal 030920 FINAL.pdf".

26. On March 10, 2020, BD accepted that offer, counter-signed the Agreement/Order, and emailed it back to Dominion, after which Dominion promptly – as reflected by the March 16, 2020 email (copy attached as Exh. "D") – enlisted BD's contribution towards marketing Eon.

27. The two (2) page .pdf document entitled "FINAL" which Dominion offered, and which BD accepted, was intended to be a binding contract. A true and correct copy of that Agreement/Order is attached as Exhibit "A".

28. The Agreement/Order did not include expressly waive the rule of contractual interpretation that any ambiguities would be construed against the drafter.

29. The Agreement/Order expressly recognized that certain, material contract terms - specifically title to each Eon delivered and security interests thereon – were omitted and would be determined later.

30. Based upon the parties' limited partnership, and further based upon BD being an early-adopter of Eon, the Agreement/Order included some unusually favorable contract terms, such as BD paying the "*Manufacturer's Cost*" for each Eon.

## II. The Parties Clarify and Ratify the Agreement/Order

31. Dominion later realized that the Agreement/Order omitted or was ambiguous regarding certain, material contract terms.

32. By a December 15, 2021 email, Dominion asked BD to sign an attached addendum for the purpose of clarifying contract terms which Dominion deemed material.

33. BD agreed to sign the addendum if, in exchange, BD could revise it to also add BD's own clarifying contract term.

34. As contemplated by the Agreement/Order's express recognition of its omission of contract terms regarding title to each Eon delivered, BD's revision clarified when title would transfer.

35. On December 31, 2021, the parties signed the Addendum to Master Sales Agreement – Sales Order (hereafter "Addendum").  A true and correct copy is attached as Exhibit "B".

36. The Addendum added to the Agreement/Order each of the parties' clarifying contract terms, and otherwise ratified the Agreement/Order.

37. The Agreement/Order, its Addendum, and emails memorialized the parties' contract, which was further reflected by the parties' performance (hereafter together referred to as the "Contract").

### III. Performance Under the Contract

38. The parties collaborated on how best to market the Eon.

39. BD invested significant time/money into marketing the Eon.

40. BD incurred significant expenses in, for example only, purchasing specialized dermatologic cameras and developing software (for both point-of-sale and segment-utilization reporting).

41. BD was induced into both investing that time/money and incurring those expenses by Dominion's representations about its long-term, limited partnership with BD.

42. Once Dominion had sufficient market exposure, and was no longer reliant on BD for marketing, Dominion sought to circumvent the unusually favorable contract terms which the parties had agreed upon.

43. Dominion implemented a strategy for undermining BD's ability to generate revenues from Eon, and to make installment payments to Dominion, so that Dominion could allege a default, and thereby pressure BD into modifying the terms of the Contract so that BD would no longer enjoy unusually favorable terms.

44. The amount of BD's monthly installment payments to Dominion were variable rather than fixed, with that amount being calculated based upon the number of Eon treatments BD sold to consumers - which was measured in "segments", hence the need for BD to develop software which reported segment utilization.

45. To undermine BD's ability to sell segments, Dominion made tactical and pernicious use of the price-floor dictated by the Agreement/Order (the "Price-Floor").

46. Implicit in that Price-Floor was the understanding that it was to use prestige-pricing to benefit the Eon brand which the parties were together marketing, rather than to put BD at a disadvantage against other health care providers who offered discount-pricing Eon to consumers.

47. Instead of universally applying a price-floor to maintain the Eon brand's prestige-pricing, Dominion allowed BD's competitors to discount segments for a price well beneath BD's Price-Floor.

48. On information and belief, Dominion also marketed to BD's competitors that the Eon was effective outside of the FDA's "intended uses" (as defined by 21 CFR §201.128 and 21 CFR §801.4), which marketing was illegal under the Federal Food, Drug and Cosmetic Act ("FFDC"), which distinguishes between, on the one hand, a manufacturer merely knowing that a health care provider is prescribing a medical device off-label and, on the other hand, a manufacturer affirmatively marketing a medical device to health care providers as something to use off-label.

49. As a natural consequence of BD's competitors (a) selling segments for a price which was beneath BD's Price-Floor, and (b) using the Eon off-label, patients would contract with BD and then cancel their contracts to switch to BD's competitors.

50. At the same time that it was undercutting BD's ability to sell segments, Dominion was also expressly withholding support needed to sell segments, and was further withholding the delivery of Eon devices to newly-opening BD locations.

51. Whether characterized as unclean hands or *in pari delicto*, Dominion unconscionably and tactically limited BD's ability to generate revenues, to sell segments, to make installment payments based upon segment-utilization, and to fully-open BD's new locations.

52. BD has been forced to retain the undersigned attorney, and is obligated to pay a reasonable fee for those legal services.

Count I – Breach of the Implied Covenant of Good Faith and Fair Dealing

53. The allegations in paragraphs 1 through 52 are re-alleged as if fully set forth herein.

54. As a matter of law, every contract contains an implied covenant of good faith and fair dealing, which exists to protect the contracting parties' reasonable expectations of their express contract.

55. The elements of an action for breach of implied covenant of good faith and fair dealing are: (1) existence of a contract; (2) the plaintiff did all, or substantially all, of the significant things the contract required it to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant's conduct was not consistent with the parties' reasonable expectations under the contract; and (5) the plaintiff was damaged. <u>Nat'l Equestrian League v. White</u>, 2021 U.S. Dist. LEXIS 207632, *16-17, 2021 WL 5890391 (SD.Fla.2021).

56. A contract exists, as memorialized by the Agreement/Order, its Addendum, and emails, and as further reflected by the parties' performance.

57. BD did all, or substantially all, of the significant things required by the Contract, except where prevented by Dominion.

58. All conditions precedent to Dominion's performance under the Contract have occurred or been waived.

59. Implicit in the contract was Dominion's obligation not to limit BD's ability to sell segments, to generate revenues, and to make installment payments to Dominion based upon segment-utilization.

60. Dominion's conduct - including in limiting BD's ability to sell segments, to generate revenues, and to make installment payments to Dominion based upon segment-utilization - was not consistent with the parties' reasonable expectations under the Contract.

61. BD was damaged by Dominion's conduct.

62. All conditions precedent have been satisfied or waived.

WHEREFORE the Plaintiff, BODY DETAILS, LLC, demands judgment against the Defendant, DOMINION AESTHETIC TECHNOLOGIES, INC., for damages, reasonable costs, and such other relief as this Court deems reasonable.

## Count II – Breach of Contract

63. The allegations in paragraphs 1 through 52 are re-alleged as if fully set forth herein.

64. The elements of an action for breach of contract are: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach. *Diaz v. Nationstar Mortg., LLC*, 2023 U.S. App. LEXIS 1403, *3, 2023 WL 334569 (11th Cir.2023).

65. A contract exists, as memorialized by the Agreement/Order, its Addendum, and emails, and as reflected by the parties' performance, together called the "Contract".

66. The Contract and its transmittal email (copy attached as Exhibit "C") referred to the social media and other support which Dominion would provide.

67. Dominion later recognized, and withheld, that support.

68. For example only, Dominion's September 1, 2022 email admitted that no customers had been referred to BD since March, 2022.

69. Dominion breached the Contract by withholding support needed to sell segments, and further by withholding the delivery of Eon devices to newly-opening BD locations.

70. BD was damaged by Dominion's conduct.

71. All conditions precedent have been satisfied or waived.

WHEREFORE the Plaintiff, BODY DETAILS, LLC, demands judgment against the Defendant, DOMINION AESTHETIC TECHNOLOGIES, INC., for damages, reasonable costs, and such other relief as this Court deems reasonable.

### Count III – Violation of the Florida Deceptive and Unfair Trade Practices Act

72. The allegations in paragraphs 1 through 52 are re-alleged as if fully set forth herein.

73. This is an action for violation of Fla.Stat. §501.201 *et seq.*, known more commonly as the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), which is brought pursuant to the doctrine of pendant jurisdiction.

74. To state a claim under FDUTPA, a plaintiff must allege three elements: (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages. *Morgan v. Enter. Leasing Co.*, 2021 U.S. Dist. LEXIS 194605, *8-9, 2021 WL 4709787 (SD.Fla.2021), citing *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (citing *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2nd DCA 2006)).

75. By virtue of the acts described above, Dominion was engaged in "trade or commerce" as such terms are defined under Fla.Stat. §501.203.

76. As more particularly described above, Dominion engaged in unconscionable or deceptive acts, and in unfair and deceptive trade practices.

77. Moreover, to the extent that Dominion violated the FFDC, that would constitute a *per se* violation of FDUTPA.

78. Dominion's acts and practices were a proximate cause of BD suffering actual damages.

79. BD is entitled to recover its attorney's fees and costs pursuant to Fla.Stat. §501.2105.

WHEREFORE the Plaintiff, BODY DETAILS, LLC, demands judgment against the Defendant, DOMINION AESTHETIC TECHNOLOGIES, INC., for damages, attorney's fees, reasonable costs, and such other relief as this Court deems reasonable.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues triable of right by jury.

The Law Office of James R. Dunn, P.A.
151 NE 16 Ave, Suite 1
Fort Lauderdale, FL 33301 (954) 684-3535
James@AttorneyJamesDunn.com

/s/James R. Dunn
James R. Dunn
FBN 40950